and there was some miscommunication, but he is on his way, and so if he is not here by the time we finish this case, then we will take up the Bush case after this particular one. Good. Mr. Kamen? Good morning. Good morning. May it please the Court, my name is Jonathan Kamen, and I am here for the appellant Steve Jackson. I would like to reserve five minutes for rebuttal, please. All right. This case involves a case of the independent contractor exception to the Federal Tort Claims Act, and basically is the question before you is, do the government's actions in its administration of a particular contract supersede the language of an agreed upon written contract between the parties? My client, Steven Jackson, was working as a hazardous disposal foreman for Shaw Environmental. During the course of his duties, he was May I interrupt for just a moment? Sure. You used the phrase independent contractor exception. Now, under the Federal Tort Claims Act, I think your argument is that the government is not liable for injury caused by the Is that correct, or is that not correct? Is there an exception or exemption explicit in the Act? There's an exception in the Act. Where? Explicit in the Act. If you take a look at page, in my brief. No, look at the Act. Okay. Where in the Act is there an explicit exception or exemption? Actually, I think the case law that has interpreted the Act has gone ahead. The Norman case. The Norman case, correct. Is there any other case? I believe that there are district cases that do go ahead and provide that that exception exists. And they cite Norman. That's correct. All right. And the question is, following up on your question, is whether the government's actions in this case are enough to go ahead and to overcome that exception? Have they exercised such control, supervision, and other really indicators of control in such a way that that exception does not apply? Here is one of my difficulties with the case, and it hasn't been briefed. I don't know why you've gone to such lengths to try to show that virtually everything the United States did, even away from the site and before Shaw was involved at the site, was to fulfill the contractors' contractual obligations. When there appears to be, at least to me, ample evidence of independent negligence by the United States before Shaw was ever at the scene. I would agree with you. We don't make that argument. Well, I think we do make that argument. The question of the nexus for our case, there clearly is independent negligence on behalf of the United States. Where do you make that argument? Where do you make that argument? It's contained in the argument of our brief, but the way that it relies, the way that it comes back and relates back to us, is that Shaw relied upon the independent negligence of the government in making its determination as to this shell being a safe shell. Well, that may be, but without the early negligence by Frank James, twice taking this shell, which was not a dud, which was not inert, that his investigation did not correctly identify, twice taking it to the scene, one could argue this accident would not have happened. I agree with you 100%. Good. And that's really the crux of our argument. But it isn't. That's why I think that's a good argument. I think the one you make, well, I won't, you know, say it again, is a weaker argument, which was totally, you know, Mr. Judge didn't like it either. Well, I think the argument that you've made is contained in our brief. And we say, but for these independent actions of James, but for him taking the shell, examining it, concealing its nature, concealing the rotating bands, painting it, sandblasting it, and then telling Al Grant that it was a shot shell, that it was a spent shell, and that it was safe to cut up, but for all of those actions on behalf of the government, and but for Shaw relying on that, my client would still have his leg. So Frank James caused the injury. That's the crux of your argument. Frank James undertook various actions that he was not contractually supposed to undertake. My client's supervisor relied on those actions by Mr. James and relied on his very specific comment. It's a safe shell. It's safe to cut up. It's a spent shell. But James caused the accident, and James is employed by the Navy. He's not an independent contractor. That's correct. I assume what you're suggesting is it should be remanded for Rule 12 discovery on the causation issue. Because if, as a matter of law, would you not concede, if, as a matter of law, it is deemed that Shaw is an intervening or supervening actor here and James did not cause the accident, then the independent contractor exemption, exception to the extent there is one, would come into play. I agree 100% with what you just said, Jeff. What about, it's my understanding that Shaw had a protocol as to how you handle these shells, and the protocol was not to rely on whatever, what anybody said as to whether it was active or a dud or not, but they should go through a certain process to ascertain that it was inactive or a dud, and that that was not followed here, so that the argument I'm putting forth for you is, even assuming that James did everything you said, wasn't the duty still on Shaw to comply with its protocol and to take the actions that were necessary to make certain that this was a dud? We agree that Shaw had a duty, a contractual duty and an actual duty to go ahead and to follow those actions. What we've argued in our brief is that the various actions of Frank Jane in having this in the government and having the shell sandblasted, having it painted, filling in the tracer holes, removing the rotating bin, each of those actions made it difficult, if not impossible, for Shaw to fulfill its duties. And from that standpoint, yes, Shaw has a duty, and if we ultimately get to trial and the court wants to go ahead and do apportioned negligence, that's fine with us. But without the actions of the government in really altering this shell, there was no way for Shaw to fulfill its duties. This was a 12B1 dismissal, correct? Correct. And it appears, at least to me, that the facts, the jurisdictional facts and the facts on the merits are intertwined. Would you agree with that? There's no way to divide them. Yes. So that's part of the complication with this particular case is that it is so fact sensitive and it is so difficult to describe and to appropriately figure out, particularly at this early stage of the proceedings, where the negligence lies. It is our position that this is really a matter for the finder of fact at trial to go ahead and determine the negligence and to go ahead and to apportion it the way that it should be apportioned. Just if I could take the last remaining time I have to address the Good Samaritan arguments that set forth in our brief. This has been misunderstood by the district court. The Good Samaritan, the accident occurred in Maryland, so we are under Maryland's substantive law, so Fourth Circuit law, even though we have brought the action in the Western District of Pennsylvania. The Good Samaritan doctrine is only a source of duty where a source of duty would otherwise not exist. There's no independent tort for Good Samaritan. There's no independent claim for Good Samaritan. It merely provides the duty and obligations on the government where we would argue one ordinarily doesn't exist. Once Frank James undertook these obligations, once he told them it was a shot shell, it was a spent shell and that it was safe to cut up, he is responsible for the fallout from his particular actions. In this case, my client losing his leg, losing use of his shoulder, powder burns over a good portion of his body and the subsequent surgeries that resulted. Thank you. I'll be back. Any other questions? Good. Thank you very much, Mr. Kamen. Mr. Walker? May it please the Court, Chris Walker representing the United States. In this case, it is uncontested that the contractor here had the duty to inspect, screen, and demilitarize ordinances at this site, at this naval site. It's also uncontested that plaintiff was injured when the contractor failed to perform these duties and that he subsequently received workers' compensation for his injuries. What plaintiff has tried to do here, the theory of the case, is to hold the United States liable for the contractor's negligence by saying that it assumed the duties, the formal duties of the contractor's contract with the government. And as the district court probably found under the independent contractor exemption, as recognized in Norman, he did no such thing. He never ordered any employee to take any action, any contract. I know the appellant says that he had specifically raised the argument I articulated earlier in his brief. I haven't found it yet, but it's probably in there and I probably did not read closely enough. But he does agree that that's a good argument to be made, so let me ask you about it. You deal only with Shaw's program and its negligence at the scene and don't deal with your own, you government employees, United States' independent negligence away from the scene and before Shaw was even active at the scene. A government employee found a suspicious round at the base near Site 41. Frank James, a base safety supervisor, performed a safety inspection and determined the round had been fired. It was inert because he believed it was fired, had been fired, it was inert. He told his people that it was safe to destroy and to green tag it and take it to the work site. Subsequently, it was mistakenly removed from the work site, sandblasted, and then James returned it. This is the second time to the work site we're saying that it was safe to cut up and within a couple of few days, the plaintiff lost his leg. Those are the facts. They all have nothing to do with Shaw. There's zero to do with Shaw and Shaw's duty. And they have nothing to do with the theory of the case here. That's also true. That's not the theory the plaintiff presented below. In fact, when we raised the superseding the intervening cause. Excuse me. Just back up. I'm sorry. We have you on tape. Just move away from the microphone just a little bit. Oh, sorry about that. Go ahead. When the government raised superseding an independent cause theory in its summary judgment motion before the district court, plaintiff didn't even respond to that where we said that if we did cause any negligence independent of the contractor, it was superseded. And as the district court noted in appendix page 15 in note 43, plaintiff didn't respond to that, which indicates that that wasn't his theory of the case. He wasn't trying to prove independently that the Navy had caused negligence. But even if he had done that. There was a lot of evidence of the independent negligence. In fact, the magistrate judge set it forth in his R&R of two pages of effectively independent negligence. Your Honor, with respect, I'm not sure if that's the case. But, again, it doesn't matter for this. But if we were to look at the negligence here. But it does matter because this was a jurisdictional dismissal. That's correct. And if there are facts that would warrant, I mean, you're essentially saying this should be a merits determination. No, Your Honor. But this is a jurisdictional dismissal. We are very, very reluctant in our case law to grant such dismissals prematurely, particularly when the jurisdictional facts are interspersed with the merits facts as they are here. That's correct. Of course, the dismissal came at the close of discovery and after the district court weighed the facts. I mean, it was a 12B1 factual attack. We're not talking about a facial attack. So the district court did have to take a look at the facts. And it probably did so here, according to the theory that Plaintiff advanced. Where did the district court tell us who caused Mr. Jackson's injuries? Well, in the contract, the district court found that the government did not assume the contractual duties of. I know that. But I'm still asking myself, who caused Mr. Jackson's injuries? Don't we need a trial? Doesn't a jury have to tell us who caused his injuries? It would be a bench trial because it's a federal court's claim back case. But the key in the contract is that if they couldn't identify the ordinance, they had to send it to the Navy facility, Dahlgren, to be explosively vented. But he identified it. James said it was safe. No, they have to. It doesn't go to the ordinance unless it's unsafe.  No, Your Honor. They have to identify the ordinance. They look it up in the catalog, as their own expert explained. They didn't look it up in the catalog. It's conceded that — Grant didn't look it up. And Grant said later on, if I had looked it up, I probably could have found it and I would have found it. And they did find it. That's correct. But the new question sure here could be negligent. I don't think that's the issue. Sure, it could well be negligent in not doing its own independent investigation and establishing that this thing was not a dud, for lack of a more elegant name. But the question that seems to interest me and Judge Hardiman, perhaps, is what about the United States' negligence also? Let me back up then and explain. This contract, the Navy entered into this contract because they felt like they needed someone with expertise to dismantle these shells. Shells that were scattered all over the base and sent to the scrapyard to be demilitarized. But that's the contract they had. And as part of that contract, Shaw, or at the time it was a previous contractor, set out a whole bunch of procedures they would take to safely remove them. And all that James or all the Navy did is bring, return a shell back so they could follow the proper procedures. Would you agree with me that if Frank James had not misidentified the shell, this accident would not have happened? Or at least, arguably, would never have occurred? No, Your Honor. It's not based on what... If he had not misidentified the shell, it would not have been destroyed by Shaw. With respect, according to Mr. Grant's deposition testimony, that's not at all clear. What about the alteration to the shell? From what I understand, they sandblasted the cover to make it shine more. But based on the depositional testimony of both Grant and James, that doesn't excuse the fact that they need to look up the shell and identify it before they cut into it. No, but it made it much more difficult to make an accurate assessment because one particular hole would have been filled. Is that incorrect? If that is true, which I'm not sure, it would cut the other way because if they can't identify the shell, they have a free ticket to send it back to the Navy and the Navy explicitly vets it. The contract's clear on that point. But James, when he turned, he brought it back a second time after it was sandblasted. That's correct. He did say when asked what he thought it was that it was a round shell safe to cut out. He had many years of experience, and they relied on his experience. I mean, it's like taking a car to an auto shop. It's funny you say that because I was going to ask you, assume that you're running an auto shop and your job is to fix somebody's car and you order four new tires from the tire company and you get assurances from the tire company that these tires are ready to be mounted and put on the car. They've been properly manufactured and inflated to the proper PSI, and you put them on the car and you give it to your client, and the client drives out and the tire explodes. Why isn't the manufacturer on the hook for that? Why does that fall exclusively at the feet of the mechanic that put the booby-trapped tire on the car? Well, Your Honor, here, I do like the analogy, although I think that the government here is… That's a crazy analogy. No, no. But the government here is the consumer or the client. The government contracted specifically… No, the guy who booby-trapped the tire works for the government. But with respect, that's not what the government's contract. The government did not contract to provide tires to Shaw. They contracted… Jackson wishes they did. Yeah, sure. But the key here is that there was a contract with Shaw to do a full inspection to identify it and not to cut into it if you couldn't reach the center. It doesn't matter if you go to drop off a car and say, I think it's the shocks, and it turns out that it's the brakes. That doesn't hold the client reliable when one of the employees takes a test drive and it ends up being that the brakes are bad. That's the theory of the case here. Well, it's ultimately for the fact finder whose negligence caused the accident, isn't it? Your Honor, if we were following your theory of the case, the plaintiff didn't, it would be a different scenario and we would have gone to summary judgment, which that's correct. But we're a 12 v. 1 dismissal. A factual dismissal, that's correct. That's right. And we don't know whose negligence caused the accident. How can one say as a matter of law that this case should have been dismissed for lack of jurisdiction? Doesn't the district court have the power, not jurisdiction, doesn't the district court have the power to decide who was negligent here? No, Your Honor. Not if the Federal Purge Claim Act independent contractor exemption applies. It doesn't. We don't know until we know who caused the accident. Don't we need findings of fact? Even accepting everything you say is true, that James didn't cause the accident, I don't see any facts in this record from the fact finder that say James did not cause it. I mean, the fact finder could say many things. The fact finder could say James was not negligent. That would be probably far-fetched on this record. The fact finder could say James was negligent. However, the contract that requires Shaw to do its own due diligence is a supervening or intervening cause that renders James no longer liable. But we don't have any fact finding of that nature here, do we? No, Your Honor. As the district court explained in footnote 43, the other side did not oppose the intervening and superseding cause theory of summary judgment. And all we have here is what he did respond to, which is the independent contract exception. Well, he maybe didn't oppose the intervening and superseding cause. I don't agree with you on that. But we're talking about a court's jurisdiction here. That's correct. And certainly the magistrate judge quite explicitly found the facts that I recited, which predated Shaw's entry onto the scene. That's correct. And he was entitled on a 12B1 motion to weigh the evidence. But he never weighed that evidence. No, you're right. That never entered into the weighing process. And he should have before he dismissed one jurisdiction. I disagree because that wasn't the theory of the case. But do you agree that he didn't weigh the evidence? He only weighed the evidence. As to Shaw. Was it a he or a she? I'm not sure. It was a he. He weighed the evidence to see whether there was a contractual obligation on Shaw's part to properly inspect. And at that point. He weighed the evidence only involving Shaw. And he found they were an independent contractor and they were negligent. And involving Shaw's. But he did not weigh. He recited all of the independent evidence I recited. But that did not enter into his weighing process. He did weigh the interaction between James and Grant. It was the only thing where it's a little disputed as to whether James told Grant it was safe. That's correct. Beyond that, there's no dispute on all of those items of independent evidence of the United States' negligence. I'm not sure that that's exactly. As you said, the district court did not make finance on those points. It just reviewed the allegations and the complaint and the discovery. So to say that they made decisions there is likely incorrect. Nobody is saying. I mean, he's not saying that you didn't bring it. That James didn't bring it. You're not saying that he didn't bring it twice to the scene. You're not saying it wasn't sandblasted. Yes. You're not taking issue with that. Which is probably what happened with just about every ordinance. The hundreds of ordinances at the site. I mean, this is no different. All of this happened before the contract began. So other than returning, the only evidence that occurred once the contract was on the site was that James returning the ordinance. So all of this happened before the contract began. By definition, it could not be conduct of the independent contractor as to which the exemption, if one exists, applies. And it would be just like every other ordinance on the site. Right. Unlike any other negligence case against the United States. Not when the United States, with respect, not when the United States enters into a contract with an expert to demilitarize ordinances. But you said the contract hadn't started yet. And that's my understanding. You're right. When these particular acts took place. That's correct. So, you know, whatever happened later is another matter. We're dealing with explosive ordinances here. Of course what happens later matters. If an employee of a contractor. No, I mean, matters for purposes of the Federal Tort Claims Act. It matters desperately otherwise. It does matter on both counts. Unless there are any further questions, I urge the Court to affirm the district court. Good. Anything else? Good. Thank you very much, Mr. Walker. Mr. Kamen. Just I'd like to address a couple of the issues. And I think Judge Berry and Judge Hardiman have hit upon the difficulty that we have with this case given the nature of the dismissal of it. Being a 12B1. We never got the full opportunity to discuss the negligence and the intertwining of the negligence.  It looks like on 27 through 29 of our brief, and then really 3 through 10 of our reply brief, we discussed all the independent acts of negligence. Oh, you list them. I agree with that. You list them. In fact, I was quoting from that list when I recited what I did. But it was in the context not, well, it doesn't matter. Right. But part of that was the way that the magistrate framed the issues for us. And I think if you look at what we discussed, this was, we always knew that we would be here on this case as an issue of initial liability. Because when we first sat down with the magistrate, and, you know, I do have the benefit of having been with this case from the beginning. The question, the issue that he framed for us, and, you know, I've been before the magistrate before. He's a, Judge Mitchell's a very competent and very good magistrate. The issue that he framed for us for the discussion and for really the initial discovery, which is all that we took was, does the independent contractor exception apply? And that's why you see everything channeled the way that it has been channeled. The answer is it might. It might. We don't know. We don't know. And we won't know until factual findings are made regarding the causation issue. That's exactly right. Assuming there is an independent contractor exception. We agree with that. Our court has so held. Right. Our court has so held. Right. I mean, we agree that, you know, and I think if you look at the way that our briefs were framed, too, we're begging for a chance to resolve these issues of fact and the intertwining of the negligence. So that's really the focus. And I did want to make a couple of other quick points about really the Frank James and the Shaw relationship, because I think that's important. We agree, and we don't think there's any dispute as to what the party's contracted to, the parties being Shaw and the government. We think that that contract is clear and it's written by somebody who wrote it with a specific frame of reference in mind to say we want protection from this. We want Shaw to overtake the responsibility for this. But that's not where the inquiry ends. It's the actions of the government in the performance of the contract. It's everything that we listed ad nauseum of Frank James and the way that he took control, supervision, and altered this shell that makes our game, so to speak, puts us in play. Regardless of what the contract said, the actions of the government are such that it merits further discovery, and really it's a matter for the finder of fact to determine who's negligent in this matter. So unless the court has any other questions. Anything else? Good. Mr. Kamen, thank you very much. Thank you very much. Case was well argued. We'll take the matter under advisory.